**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS, DISTRICT 141 | Civil No. 1:21-cv-04589 |
| PLAINTIFF, | Honorable Gary Feinerman |
| v. | |
| UNITED AIRLINES, INC., | |
| DEFENDANT. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNITED AIRLINES INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 4

    I.    The United-IAM System Board of Adjustment ................................. 4

    II.   The Board's Award ............................................................................ 6

ARGUMENT .......................................................................................................................... 8

    I.    COUNT I FAILS TO STATE A CLAIM ....................................... 8

    II.   COUNT II FAILS TO STATE A CLAIM ................................... 14

CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affymax, Inc. v. Ortho-McNeil-Jannssen Pharms., Inc.*,
   660 F.3d 281 (7th Cir. 2011) ................................................................................. 11

*Air Methods Corp. v. OPEIU*,
   737 F.3d 660 (10th Cir. 2013) ............................................................................... 14

*Am. Train Dispatchers Ass'n v. Norfolk & W. Ry. Co.*,
   937 F.2d 365 (7th Cir. 1991) ...................................................................... 1, 10, 11

*Anderson v. Nat'l R.R. Passenger Corp.*,
   754 F.2d 202 (7th Cir. 1985) ................................................................................. 12

*Ass'n of Flight Attendants-CWA v. United Airlines, Inc.*,
   2020 WL 2085003 (N.D. Ill. Apr. 30, 2020) ........................................................ 10

*Bates v. B&O R.R. Co.*,
   9 F.3d 29 (7th Cir. 1993) ....................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 8

*Betts v. United Airlines, Inc.*,
   768 F. App'x 577 (7th Cir. 2019) ...................................................................... 3, 13

*Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*,
   373 U.S. 33 (1963) .................................................................................................... 4

*Hill v. Norfolk & W. Ry. Co.*,
   814 F.2d 1192 (7th Cir.1987) ................................................................................ 10

*Int'l. Bhd. Of Elec. Workers v. CSX Transp., Inc.*,
   369 F. Supp .2d 982 (N.D. Ill. 2005), *aff'd* 446 F.3d 714 (7th Cir. 2006) ........... 3, 13

*Intl. Bhd. of Elec. Workers Loc. 97 v. Niagara Mohawk Power Corp.*,
   143 F.3d 704 (2d Cir. 1998) .............................................................................. 3, 14

*Lippert Tile Co. v. Int'l Bricklayers & Allied Craftsmen*,
   724 F.3d 939 (7th Cir. 2013) ................................................................................. 13

*Loc. 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*,
   495 F.3d 779 (7th Cir. 2007) ................................................................................... 8

*Loc. 591, Transp. Workers Union of Am. v. Am. Airlines, Inc.*,
   2015 WL3852958 (N.D. Ill. June 19, 2015) ......................................................... 15

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Lyons v. Norfolk & W. Ry. Co.*,
  163 F.3d 466 (7th Cir. 1999) ........................................................................... 2, 10, 13

*Matthews v. Eldridge*,
  424 U.S. 319 (1976).................................................................................................... 3

*Pokuta v. Trans World Airlines, Inc.*,
  191 F.3d 834 (7th Cir. 1999) ............................................................................. 8, 9, 12

*Tice v. Am. Airlines, Inc.*,
  288 F.3d 313 (7th Cir. 2002) ................................................................................. 4, 15

*Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*,
  558 U.S. 67 (2009)................................................................................................. 9, 13

*Union Pac. R.R. Co. v. Sheehan*,
  439 U.S. 89 (1978)......................................................................................... 1, 4, 8, 15

*W.R. Grace & Co. v. Loc. Union 759*,
  461 U.S. 757 (1983)................................................................................................... 14

*Wright v. Associated Ins. Cos.*,
  29 F.3d 1244 (7th Cir. 1994) ...................................................................................... 8

**Statutes**

45 U.S.C. § 153, First (q)........................................................................................... 1, 8

45 U.S.C. §§ 151, *et seq.*............................................................................................... 1

**Other Authorities**

*Port Authority of New York & New Jersey's Amended Rules for Implementation of Minimum
  Wage Policy for Non-Trade Labor Service Contracts – LaGuardia Airport, John F. Kennedy
  International Airport, and Newark Liberty International Airport* ............................................ 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 8

## PRELIMINARY STATEMENT

The collective bargaining agreements between United Airlines, Inc. ("United" or "Company") and the International Association of Machinist and Aerospace Workers, District 141 ("IAM" or "Union") for the Fleet Service and Passenger Service employee groups (the "CBAs") provide, pursuant to the mandate of the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, ("RLA"), for a System Board of Adjustment (the "Board"), chaired by a neutral labor arbitrator, to decide disputes regarding the interpretation or application of the CBAs. In this case, the IAM submitted a grievance to the Board alleging that United violated nine provisions of the CBAs and the parties then selected a neutral labor arbitrator to chair the Board for the CBA grievance proceedings. After United moved the Board to dismiss the Union's grievance, and based on "the thoughtful and comprehensive submissions of both parties," the Board granted United's motion and dismissed the Union's grievance in a written decision ("Award") (ECF No. 20-6). Under the RLA, this Award is final and binding on the parties, and not subject to review by a court absent extraordinary circumstances not present here. *See Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978); *Am. Train Dispatchers Ass'n v. Norfolk & W. Ry. Co.*, 937 F.2d 365, 367 (7th Cir. 1991).

In Count I of the First Amended Complaint ("FAC") (ECF No. 20), the IAM seeks to vacate the Award on the ground that the Board exceeded its jurisdiction in denying the IAM's grievance. Under the RLA, the scope of judicial review of arbitration awards is "among the narrowest known to the law." *Union Pac. R.R.*, 439 U.S. at 91 (quotation omitted). While a court may refuse to enforce an award if the Board has failed to confine itself to matters within the scope of the Board's jurisdiction, *see* 45 U.S.C. § 153, First (q), "the question for a federal court asked to set aside an arbitration award is not whether the arbitrator erred in interpreting the

contract; it is not whether they clearly erred in interpreting the contract; it is not whether they

grossly erred in interpreting the contract; *it is whether they interpreted the contract*." *Lyons v.

Norfolk & W. Ry. Co.*, 163 F.3d 466, 470 (7th Cir. 1999) (quotation omitted) (emphasis added).

Here, the Board indisputably interpreted the CBAs in denying the Union's grievance,

which is fatal to the First Amended Complaint. The grievance alleged that United violated the

CBAs because while United provides the relevant IAM-represented employees with floating

holidays they may use on Martin Luther King, Jr. Day ("MLK Day"), the *Port Authority of New

York & New Jersey's Amended Rules for Implementation of Minimum Wage Policy for Non-

Trade Labor Service Contracts – LaGuardia Airport, John F. Kennedy International Airport,

and Newark Liberty International Airport* (the "Port Authority's Amended Rules"), according to

the IAM, require United to treat MLK Day as a "fixed holiday" and are incorporated by

reference in the CBAs. In dismissing the grievance, the Board held that the "Martin Luther

King, Jr. Day is not expressly or impliedly covered by the relevant CBAs." (Award at 4.) The

Board also held that "the Port Authority Amended Rules are not expressly covered by the terms

of the CBAs," and that the Union's assertion that those rules are incorporated by reference in the

CBAs "is misplaced," including because the Amended Rules—which are applicable to United

via an operating contract between United and the Port Authority—are not "contemplated by the

CBA" provisions that require United to "abide by certain federal, state, or local laws if the terms

differ from the CBAs." (*Id.* at 3-6.) Finally, and in the alternative, the Board found that the

grievance was also untimely under the procedural provisions of the CBAs, because United's

"current handling of the MLK holiday has been in place for several years, and nothing in the

CBA has ever suggested that the day is a fixed holiday." (*Id.* at 6.) Contrary to the First

Amended Complaint, therefore, the Board did not refuse to "hear the grievances," but instead

rejected the Union's argument that the CBAs require United to provide a fixed rather than floating holiday for MLK Day. Because the Board "interpreted the contract," *Lyons*, 163 F.3d at 470 (quotation omitted), in denying the Union's grievance, Count I fails to state a claim.

Count I's additional alleged grounds for vacating the Award also fail. The Union's assertion that the Board failed to comply with the requirements of the RLA simply adds a different conclusory label to the Union's argument that the Board exceeded its jurisdiction, but that argument fails for the reasons stated above. Meanwhile, the Union's reliance on "due process" or "public policy," neither of which is among the three grounds to vacate stated in the RLA, also fails. With respect to due process, the Board, which issued its detailed written Award based on "the thoughtful and comprehensive submissions of both parties," (Award at 3), did not conceivably deny the Union the "opportunity to be heard at a meaningful time and in a meaningful manner," *Int'l. Bhd. Of Elec. Workers v. CSX Transp., Inc.*, 369 F. Supp .2d 982, 988 (N.D. Ill. 2005), *aff'd* 446 F.3d 714 (7th Cir. 2006) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). With respect to public policy, the Seventh Circuit has "never opined whether an arbitral award can be contested on public policy grounds," *Betts v. United Airlines, Inc.*, 768 F.. App'x 577, 579 (7th Cir. 2019), but Count I fails in any event because it does not (and cannot) allege that "the award itself, as contrasted with the reasoning that underlies the award, 'creates an explicit conflict with other laws and legal precedents," *Intl. Bhd. of Elec. Workers Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998), particularly where the Award found that United's "current handling of the MLK holiday has been in place for several years," and the Award simply denies a claim that this longstanding policy violates the CBAs, (Award at 6.)

Count II, which asks this Court to find that United breached the CBAs, also fails to state

a claim. Under the RLA, the Board has "mandatory, exclusive and comprehensive" jurisdiction to decide disputes over the interpretation or application of the CBAs, and courts lack subject-matter jurisdiction over such disputes. *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 36-38 (1963); *see also Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 314 (7th Cir. 2002). The IAM recognized this black-letter principle when it submitted its grievance to the Board. With the Board having now issued its Award denying the IAM's grievance, the Union's sole avenue for challenging the Award is under the standard for judicial review set forth by the RLA, which is "among the narrowest known to the law," *Union Pac. R.R.*, 439 U.S. at 91 (quotation omitted), and which the Union has failed to meet, for the reasons set forth above in the argument to dismiss Count I. Accordingly, Count II fails to state a claim.

United's motion to dismiss should be granted.

## STATEMENT OF FACTS

### I.     The United-IAM System Board of Adjustment

The IAM is the certified union representative for a number of employee groups at United, including the Fleet and Passenger Service groups. (FAC ¶ 2; Award at 1.) The governing terms and conditions of employment for the Fleet and Passenger Service groups are set forth in CBAs between United and the IAM, which are "substantially identical" as relevant here. (Award at 1 n.1, ECF No. 20-1 (Passenger Service), 20-2 (Fleet Service).)[1] Consistent with the requirements

---

[1] The Union's grievance submission to the Board alleged violations of the Fleet and Passenger Service CBAs. (*See* Award at 1 n.1.) In the First Amended Complaint, the Union purports to assert claims on behalf of these two groups as well as the Storekeeper and Maintenance Instructor groups. (FAC ¶¶ 4-5.) Because the grievance submitted to the Board did not allege a violation of the Storekeeper and Maintenance Instructor CBAs, the Union plainly fails to state a claim here as to those two groups. In any event, the First Amended Complaint does not identify any difference in the applicable CBA provisions as between those two groups and the Fleet and Passenger Service groups, so these claims fail together.

of the RLA, the CBAs provide for a System Board of Adjustment to conduct "final and binding arbitration of various disputes when not settled in grievance handling." (Award at 1; *id.* at 1 n.1.) The CBAs set forth the applicable grievance and System Board of Adjustment procedures. (FAC ¶¶ 16-20; ECF No. 20-1 at 9-3–9-7; ECF No. 20-2 at 9-3–9-7.)

In October 2020, the IAM submitted to the Board the grievance that is the subject of this lawsuit, and the parties mutually selected a neutral labor arbitrator, Arbitrator James Conway ("the Arbitrator"), to chair the Board. (FAC ¶¶ 17-20.) The grievance alleged:

> the Company violated the CBAs at issue, and/or applicable law, when it failed to adhere to the Port Authority of New York and New Jersey's Amended Rules for Implementation of Minimum Wage Policy for Non-Trade Labor Service Contracts – LaGuardia Airport, John F. Kennedy International Airport and Newark Liberty International Airport dated October 15, 2018 ('Amended Rules') as those CBAs and Port Authority rules address holiday pay for Martin Luther King, Jr. Day.

(Award at 1-2.) The Port Authority's "Amended Rules provide that 'all Contractors subject to the Policy and these Rules shall provide its workers performing Covered Services or Port District Covered Services a paid holiday for Martin Luther King, Jr. Day.'" (Award at 2.) As the Board recognized in the Award: "Neither the Company nor either CBA at issue designates Martin Luther King, Jr. Day as a paid holiday, but bargaining unit members are entitled to floating holidays which may be used on the Martin Luther King, Jr. Holiday if desired." (*Id.*)

The "Union's grievance identifie[d] the following Questions at Issue":

1) Is United Airlines subject to the jurisdiction of the Port Authority of New York & New Jersey?
2) Did United Airlines, Inc. violate the Minimum Wage Policy of the Port Authority of New York & New Jersey?
3) Did the violation of the Minimum Wage Policy additionally violate the collective bargaining agreements to which United is a signatory?
4) Is the violation of the Minimum Wage Policy arbitrable without the Union having grieved the violation within 30 days of its occurrence?

(Award at 2.) The grievance alleged "the following CBA provisions [have] been violated:

Article 4 – Hours of Service & Overtime; Article 5 – Vacation & Holidays; Article 10 – General

& Miscellaneous." (*Id.*)

United submitted to the Board a motion to dismiss the grievance on May 14, 2021, the Union filed its opposition on May 28, 2021, and United filed a reply on June 4, 2021. (Award at 3; FAC ¶ 23.) In its Award, the Board stated it: "has benefited greatly from the thoughtful and comprehensive submissions of both parties." (Award at 3.)

## II.    The Board's Award

On June 5, 2021, the Arbitrator issued an Award on behalf of the Board denying IAM's grievance. "At the outset," the Board "stress[ed] that the Board has jurisdiction to determine violations of the [CBAs]." (Award at 4.) The Board found that providing a holiday for "Martin Luther King, Jr. Day is not expressly or impliedly covered by the relevant CBAs." (*Id.*) And "[n]either the Company nor either CBA at issue designates Martin Luther King, Jr. Day as a paid holiday, but bargaining unit members are entitled to floating holidays which may be used on the Martin Luther King, Jr. Holiday if desired." (Award at 2.)

The Board found that "each of the CBA violations asserted by the IAM depends on first establishing that . . . United has violated the Port Authority Policy." (Award at 4.) But the Board found that the Union's allegations failed to establish a violation of the CBAs for multiple reasons. To start, "the Port Authority Amended Rules are not expressly covered by the terms of the CBAs." (*Id.*) As to the Union's argument that "nine different provisions in those agreements state the Company will abide by certain federal[,] state[,] or local laws if the terms differ from the CBAs,"  the Board found that argument "misplaced" because "[t]hose provisions are not in play in context of this dispute." (Award at 5-6.) Specifically, as stated by the Board: "We see no evidence or authority here supporting the contention that Port Authority rules and/or policies have the effect of federal, state[,] or local law as contemplated by the CBA." (Award at 6.) The

Board recognized that "[t]he Port Authority has no ability to enact law, and its policy is not law." (*Id.*)  Instead, the Port Authority is a "joint venture" between New York and New Jersey and United's relationship to the Port Authority arises from a contract with the Port Authority.  (*Id.*).

According to the Board, "if the [Union's] contention here is that United violated external law—a statutory right to a paid holiday—the Union must seek enforcement or application of Port Authority Policy in the courts, not in arbitration."  (Award at 5.)  But as the Board recognized, the Port Authority Amended Rules state that the "Port Authority will enforce its minimum wage rules . . . only using the means that would be available to a similarly-situated private party" including "initiating a breach of contract law suit" alleging that the employer breached the terms of its operating contract with the Port Authority.  (ECF No. 20-5 at 2.)  In the Award, the Board noted that there has never been "any showing that the enforcement mechanism at the Port Authority's disposal has ever been invoked to assert breach of contract charges against United . . . for non-compliance with its minimum wage rules with respect to MLK Day, part of United's binding legal agreement under its contract with the Authority."  (Award at 6.)

Finally, and in the alternative, the Board found that "the Union's challenge to the Company's handling of the holiday is untimely." (Award at 6.)  On this point, the Board held that United's "current handling of the MLK holiday has been in place for several years, and nothing in the CBA has ever suggested that the day is a fixed holiday."  (*Id.*; *see also* ECF No. 20-1 at 9-3–9-5; ECF No. 20-2 at 9-3–9-5 (timeliness provisions of CBAs.))

The Board therefore dismissed the Union's grievance on three separate grounds: "lack of contractual grounds for grieving; failure of the CBAs to vest this Board with jurisdiction to interpret or enforce Port Authority Policy; and untimely filing."  (Award at 6-7.)[2]

---

[2] United's motion before the Board argued that the Union's grievance was substantively unarbitrable, in addition to failing to state a claim for violation of the CBAs, because the grievance depended entirely on

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). In ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider documents that "are referred to in the plaintiff's complaint and are central to [plaintiff's] claim," *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994), and "[a]ny written instrument, such as an arbitration award, that is attached to a complaint is considered part of that complaint." *Loc. 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). As detailed below, Counts I and II fail to state a claim and the First Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

## I.     COUNT I FAILS TO STATE A CLAIM

Count I (Vacate Arbitration Award) alleges that the Court should vacate the Board's written arbitration Award dismissing the Union's grievance. (FAC ¶¶ 29-39.) Count I fails under the applicable legal standard set forth by the RLA. Under the RLA, "which permits federal courts to intervene only in limited circumstances, judicial review of a board of arbitrators' decision is 'among the narrowest known to law.'" *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (quoting *Union Pac. R.R.*, 439 U.S. 89). "Generally speaking, a federal court has jurisdiction to review the Board's decision only when it is asserted that (1) the Board failed to comply with the requirements of the Railway Labor Act; (2) the Board failed to confine itself to matters within its jurisdiction; or (3) the Board or one of its members engaged in fraud or corruption." *Id.*; 45 U.S.C. § 153, First (q). The Seventh Circuit

---

an interpretation of the Port Authority Policy. (Award at 3-6.) In granting the motion, the Board did not refuse to decide the grievance but instead interpreted the CBAs and found no basis for the grievance. (*Id.* at 6-7.)

has also recognized a fourth category, where "a party was denied due process." *Pokuta*, 191

F.3d at 839; *cf. Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 75

(2009) ("*Locomotive Eng'rs*") (acknowledging, without resolving, a circuit split "on whether

[the RLA] precludes judicial review . . . for due process.")  While Count I appears to assert that

each of these grounds other than fraud or corruption require vacating the Award, the Union does

not come close to satisfying any of the RLA's extremely narrow grounds for vacating the Award.

    A.  <u>The Board Properly Exercised Its Jurisdiction</u>

        The Union argues that the Award should be vacated because the Arbitrator (acting as the

neutral chair of the Board) "did not base his decision on an interpretation of the [CBAs] or the

[RLA]."  (FAC ¶ 31.)  Specifically, the Union argues that the Arbitrator impermissibly:  (1)

"determin[ed] that he did not have substantive jurisdiction to hear the grievances presented," and

did so based on the Port Authority Rules rather than "the [CBAs] between the parties or the

[RLA]"; and (2) found that the grievance was "untimely" when "he did not have jurisdiction to

hear the timeliness issue."  (FAC ¶¶ 29-33.)  Both arguments are without merit and incapable of

satisfying the RLA's standard for vacating the Award.

        First, the Union argues that the Board determined it "did not have substantive jurisdiction

to hear the grievances presented," (FAC ¶ 29), but the Board plainly did no such thing.  At the

"outset" of its analysis, the Board expressly recognized its jurisdictional mandate under the

CBAs, in accordance with the RLA: "the Board has jurisdiction to determine violations of the

[CBAs]."  (Award at 4.)  In its Award, the Board then exercised its jurisdictional mandate—

rejecting the Union's arguments that the Company had in any manner violated the CBAs with

respect to MLK Day.  Specifically, the Board held that "[t]he Martin Luther King, Jr. Day is not

expressly or impliedly covered by the relevant CBAs."  (*Id*.)  The Board's conclusion that

"nothing in the CBA has ever suggested that the [MLK] day is a fixed holiday" reflects a categorical rejection of the Union's grievance position, which argues that the Company's failure to treat MLK Day as a fixed holiday (rather than a floating holiday) violates the CBAs. (Award at 6; *see also* Award at 4; FAC ¶¶ 8-10, 17.) Under the governing legal standard set forth by the RLA, this is the end of the analysis and the First Amended Complaint fails as a matter of law, because the Board expressly and indisputably interpreted the CBAs when it rejected the Union's grievance position. *See Hill v. Norfolk & W. Ry. Co.,* 814 F.2d 1192, 1195 (7th Cir.1987) ("once the court is satisfied that they were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrators haven't ordered anyone to do an illegal act."); *see also, e.g., Ass'n of Flight Attendants-CWA v. United Airlines, Inc.*, 2020 WL 2085003, at *6 (N.D. Ill. Apr. 30, 2020) ("In short, the Board interpreted the CBA, which is enough for this Court."); *Lyons*, 163 F.3d at 470; *Am. Train Dispatchers Ass'n*, 937 F.2d at 367.

The Board also concluded that the Union's grievance failed under the terms of the CBAs for an additional reason: while the grievance argued that "nine different provisions in those agreements state that the Company will abide by certain federal[,] state[,] or local laws if the terms differ from the CBAs," the Board held that "[t]hose provisions are not in play in context of this dispute" because "[t]he Port Authority has no ability to enact law, and its policy is not law." (Award at 3, 6.) Thus, the Board concluded: "[w]e see no evidence or authority here supporting the contention that Port Authority rules and/or policies have the effect of federal, state[,] or local law *as contemplated by the CBA*." (Award at 6) (emphasis added.) Because the Board indisputably interpreted the CBA in reaching this conclusion—a conclusion that is independently fatal to the Union's grievance—Count I fails. *See Hill*, 814 F.2d at 1192.

Second, the Union's argument that the Board exceeded its jurisdiction by finding the

grievance "untimely" (FAC ¶ 32-33) also fails.  As a threshold matter, the Board's holding, in the alternative, that the grievance should be dismissed as untimely *under the timeliness provisions of the CBAs* is fatal to Count I because it shows that the Board interpreted the CBAs.  As stated in the Award: "United asserts without challenge that its current handling of the MLK holiday has been in place for several years, and nothing in the CBA has ever suggested that the day is a fixed holiday."  (Award at 6.)  Thus, the Award holds: "under the provisions of the CBAs, the Union's challenge to the Company's handling of the holiday is untimely."  (*Id*.)  This language expressly confirms that, even if the Board were to accept the Union's invitation to interpret the Port Authority's Amended Rules as if they were fully incorporated into the CBAs, the grievance would be dismissed "under the provisions of the CBAs" because it is an "untimely filing."  (*Id.*)  That should be the end of Count I.  *See Am. Train Dispatchers Ass'n*, 937 F.2d at 366 ("As a general matter, the Adjustment Board acts within its jurisdiction when it interprets the procedural requirements of a [CBA].")

The Complaint's assertion that the Board "did not hear any testimony nor review any documents," (FAC ¶ 32), in deciding that timeliness was an alternative basis for dismissing the grievance does not possibly establish that the Board exceeded its jurisdiction such that the Award should be vacated under the RLA.  To start, the Award expressly sets forth a reasoned basis for concluding that the grievance is untimely under the CBAs: "United asserts without challenge that its current handling of the MLK holiday has been in place for several years, and nothing in the CBA has ever suggested that the day is a fixed holiday."  (Award at 6.)  That is *more* than is required to defeat the Union's request to vacate the Award.  *See Affymax, Inc. v. Ortho-McNeil-Jannssen Pharms., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011) ("No rule of law requires arbitrators to render opinions" or "to discuss every issue that the parties contested.")  Furthermore, the

"documents" before the Board included not only "the thoughtful and comprehensive submissions of both parties" on United's motion to dismiss, but also the CBAs that indisputably set forth both the applicable timeliness provisions and the provisions that the Union alleged had been violated. (Award at 1, 4; *see also* FAC ¶ 18; ECF No. 20-1 at 9-3-9-4; ECF No. 20-2 at 9-3.) Plaintiff's assertion that this record was somehow inadequate for the Board's alternative holding—that the grievance was untimely under the CBAs—fundamentally misinterprets the applicable legal standard under the RLA. "Although plaintiff may disagree that the evidence underlying the Board's decision is adequate, the sufficiency of the evidence comprising the foundation of the Board's decision is not reviewable." *Anderson v. Nat'l R.R. Passenger Corp.*, 754 F.2d 202, 203-04 (7th Cir. 1985); *see also Pokuta*, 191 F.3d at 841; *Bates v. B&O R.R. Co.*, 9 F.3d 29, 32 (7th Cir. 1993).

B. Each of the Union's Remaining Arguments for Vacating the Award Also Fail

The Union's allegations that the Board "failed to comply with the requirements under the [RLA]," (FAC ¶ 33), are simply an additional conclusory label the Union applies to its allegations that the Board exceeded its jurisdiction in issuing the Award, which fail for the reasons detailed above—the Union does not allege that the Award violated any of the RLA's statutory provisions.

Nor do the Union's allegations regarding the lack of "due process," (FAC ¶¶ 34-36), support vacating the Award. While the Seventh Circuit has recognized a "due process" category for review of a Board's award, *Pokuta*, 191 F.3d at 839, the Supreme Court has stated that it would be, at a minimum, "uncommon" for such a claim to proceed on this basis because "many of the cases reviewing ostensibly extra-statutory due-process objections could have been accommodated within the [RLA's] statutory framework." *Locomotive Eng'rs*, 558 U.S. at 81 n.

7 (quotation omitted).  In any event, the "fundamental requirement of due process"—"the opportunity to be heard at a meaningful time and in a meaningful manner," *Int'l.Bhd. . Of Elec. Workers.*, 369 F.Supp.2d at 988)—was plainly satisfied here, where the Board issued its Award based on "the thoughtful and comprehensive submissions of both parties."  (Award at 3.)

With respect to due process, the Union alleges that it was not provided a sufficient opportunity to provide evidence regarding the timeliness issue.  (FAC ¶ 34.)[3]  But, as stated in the Award, this ignores that the Union simply failed to provide responsive evidence: "United asserts *without challenge* that its current handling of the MLK holiday has been in place for several years." (Award at 6) (emphasis added.) The Union's additional argument that the Award reflected a "mistaken assertion" regarding the frequency with which private employers in the United States typically offer fixed paid days off for certain holidays (FAC ¶ 36; Award at 5) is another fruitless attempt to re-litigate facts addressed by the Board.  *See Lyons*, 163 F.3d at 468 n. 1 (courts "have no authority" to review a System Board's "findings of fact.")  Finally, the Union's allegation that it did not have the opportunity to file a sur-reply after United filed its reply brief to the Board (FAC ¶ 35) concerns a procedural matter squarely within the Board's jurisdiction, and is not conceivably a basis to vacate the Award.  *See Lyons*, 163 F.3d at 470.

The Union's assertion that the Award should be vacated based on "public policy" also fails.  The RLA does not identify public policy as one of the three specific grounds for vacating a System Board award, and the Seventh Circuit has "never opined whether an arbitral award can be contested on public policy grounds."  *Betts*, 768 F.App'x at 579.  Even if public policy claims

---

[3] The Union does not allege a due process violation based on the fact that its grievance was denied via written motion rather than evidentiary hearing.  Nor could the Union make any such argument because it acquiesced in briefing on United's motion to the Board, without objection.  *See Lippert Tile Co. v. Int'l Bricklayers & Allied Craftsmen,* 724 F.3d 939, 945 (7th Cir. 2013).

were recognized, Count I would fail because the Union does not allege that "the award itself" rather than "the underlying reasons for the award, violates public policy." *See Air Methods Corp. v. OPEIU*, 737 F.3d 660, 669 (10th Cir. 2013) (quotation omitted). The Union's only two allegations regarding public policy are: (1) the Board stated that MLK Day "closely resembles a non-federal holiday," (FAC ¶ 37), when in fact the Award states that MLK Day is "a federal holiday," (Award at 5); and (2) that the Board "found that Port Authority Regulations were not actual laws or regulations that United had to follow," (FAC ¶ 38), when in fact the Board found "no evidence or authority here support the contention that Port Authority rules and/or policies have the effect of federal, state or local law *as contemplated by the CBA*," (Award at 6 (emphasis added). Neither allegation conceivably establishes that the Award itself violates any public policy that is "well defined and dominant" as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 766 (1983) (quotation omitted); *see also Niagara Mohawk*, 143 F.3d at 716 ("[A] court's task in reviewing an arbitral award for possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, 'creates an explicit conflict with other laws and legal precedents.'").

Count I fails to state a claim for relief.

## II.    COUNT II FAILS TO STATE A CLAIM

In Count II (Breach of the CBA), the Union alleges the Board declined to "hear the grievances" and that this Court therefore "has substantive jurisdiction to hear the grievances and determine that United breached the current [CBAs] and the Port Authority Rules and Regulations." (FAC ¶ 41.) As detailed above with respect to Count I, the Board did not decline to hear the grievance, but rather analyzed the Union's allegations that United violated the CBAs

and rejected those allegations.

Count II seeks a second bite at the CBA dispute that was already decided by the Board by asking the Court to hold that United has violated the CBAs. But it is black-letter law that "[a]rbitral boards established pursuant to the Railway Labor Act have exclusive jurisdiction to resolve disputes over the application of collective bargaining agreements in the railroad and airline industries." *Tice*, 288 F.3d at 314. The Union does not dispute that proposition here: to the contrary, the Union submitted its grievance to a System Board established pursuant to the RLA and then fully litigated United's motion to dismiss before the Board.[4] And the Union may challenge the Board's Award only under the applicable legal standard set forth by the RLA, which is "among the narrowest known to the law." *Union Pac. R.R.*, 439 U.S. at 91 (quotation omitted). As detailed with respect to Count I, the Union has failed to come close to satisfying that standard here. Count II thus fails to state a claim for relief.

## **CONCLUSION**

For the foregoing reasons, United respectfully requests that the First Amended Complaint be dismissed with prejudice.

---

[4] Because the RLA deprives this Court of jurisdiction to decide any claim that United breached its CBAs, the Court could, in the alternative, dismiss Count II pursuant to Federal Rule 12(b)(1) for lack of subject-matter jurisdiction. *See, e.g., Loc. 591, Transp. Workers Union of Am. v. Am. Airlines, Inc.*, 2015 WL3852958, at *7 (N.D. Ill. June 19, 2015). However, because the IAM submitted its First Amended Complaint (like its Complaint) after the Board issued its Award, and because the RLA's standard for vacating an Award therefore clearly controls this case, United has moved to dismiss Count II, like Count I, under Federal Rule 12(b)(6).

Dated:  November 8, 2021.

Respectfully submitted,

/s/ Robert A. Siegel

Robert A. Siegel (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California, 90071-2899
(213) 430 6000
rsiegel@omm.com

M. Tristan Morales (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 I Street NW
Washington DC, 20006
(202) 383-5300
tmorales@omm.com

Larry S. Kaplan
lkaplan@kmazuckert.com
Marnie A. Holz
mholz@kmazuckert.com
KMA ZUCKERT LLC
200 W. Madison Street, 16th Fl.
Chicago, IL  60606
Tel: (312) 345-3000
Fax: (312) 345-3119

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 8, 2021, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendant United Airlines, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint to be filed with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

/s/ Robert A. Siegel

Robert A. Siegel (*pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California, 90071-2899
(213) 430 6000
rsiegel@omm.com

*Attorneys for Defendant*