UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS, DISTRICT 141, | ) ) ) ) | 21 C 4589 |
| Plaintiff, | ) ) | Judge Gary Feinerman |
| vs. | ) ) | |
| UNITED AIRLINES, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this suit under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, the International Association of Machinists and Aerospace Workers, District 141, asks the court to vacate an arbitration award entered by the System Board of Adjustment in favor of United Airlines or, in the alternative, to find on the merits that United breached the parties' collective bargaining agreements ("CBAs"). Doc. 20. United moves under Civil Rule 12(b)(6) to dismiss the suit. Doc. 23. The motion is granted.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider additional facts set forth in District 141's briefs opposing dismissal, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to District 141 as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In

1

setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

District 141 is a union that represents several bargaining units at United, and the parties are signatories to several CBAs. Doc. 20 at ¶¶ 4-5, 15; Docs. 20-1, 20-2, 20-3, 20-4. The CBAs provide for grievances to be settled through a four-step dispute resolution process, the last step of which, consistent with the RLA, is arbitration before the System Board of Adjustment. Doc. 20 at ¶¶ 6-7; *e.g.*, Doc. 20-1 at 101-103.

The CBAs all have provisions requiring United to "abide by federal, state or local laws if the terms differ from the CBA." Doc. 20 at ¶ 16. District 141 submitted grievances asserting that United violated those provisions by failing to comply with the Port Authority of New York & New Jersey's Amended Rules for Implementation of Minimum Wage Policy or Non-Trade Labor Service Contracts – LaGuardia Airport, John F. Kennedy International Airport and Newark Liberty International Airport. *Id.* at ¶¶ 8, 17-18; *see* Doc. 20-5 (the Amended Rules). The Amended Rule at issue states in pertinent part: "If an employer provides a 'paid holiday' … on any calendar day, the employer must do the same on Martin Luther King, Jr. Day." Doc. 20-5 at 10-11; Doc. 20 at ¶¶ 10, 17.

After exhausting the dispute resolution process's first three steps, District 141 submitted the grievances to the Board. *Id.* at ¶ 19. United moved to dismiss, both sides submitted briefs, and United submitted a reply brief without direction from the Board. *Id.* at ¶¶ 21-23. One day later, and without waiting for District 141 to submit a surreply brief, the Board issued a written decision granting United's motion to dismiss. *Id.* at ¶ 24; Doc. 20-6.

In so doing, the Board stated that while it "very rarely grants motions to dismiss prior to arbitration, … [t]he circumstances presented … are unique" and warranted dismissal. Doc. 20-6 at 5. The Board summarized District 141's position as follows:

> As the Union correctly notes, the CBA terms require compliance with local laws. With respect to its obligations under the CBAs, nine different provisions … state that the Company will abide by certain … local laws if the terms differ from the CBA. The Union stresses that those terms require the Company to comply with local minimum wage laws … , and suggests that the Amended Rules are the equivalent of such obligations.

*Id*. at 6-7. The Board rejected District 141's position, reasoning as follows:

> We see no evidence or authority here supporting the contention that Port Authority rules and/or policies have the effect of federal, state or local law as contemplated by the CBA. The Port Authority has no ability to enact law, and its police is not law. Nor, indeed, has there been any showing that the enforcement mechanism at the Port Authority's disposal has ever been invoked to assert breach of contract charges against United or any other employers for non-compliance with its minimum wage rules with respect to MLK Day, part of United's binding legal agreement under its contract with the Authority.
>
> In sum, Port Authority Policy is not law; United's handling of the holiday does not violate any law, state or federal; and whether it violates Port Authority Policy is not an appropriate question in this forum.

*Id*. at 7. The Board held in the alternative that, "even if the Board were to consider the issue under the provisions of the CBAs, the Union's challenge to the Company's handling of the holiday is untimely." *Ibid*.

## Discussion

"In reviewing the award of an arbitrator acting under the RLA, *see* 45 U.S.C. § 153 First (q), [the court] appl[ies] one of the most deferential standards of judicial review in all of federal law." *Bhd. of Locomotive Eng'rs & Trainmen, Gen. Comm. of Adjustment, Cent. Conf. v. Union Pac. R. Co.*, 719 F.3d 801, 803 (7th Cir. 2013) (citing *Lyons v. Norfolk & W. Ry. Co.*, 163 F.3d 466, 469 (7th Cir. 1999)). "A reviewing court … may disturb an arbitration award only if the

arbitrator did not comply with the RLA, exceeded the arbitral jurisdiction, or committed fraud," *ibid.*, or if "a party was denied due process," *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999). District 141 offers three grounds for overturning the Board's dismissal of its grievances. All lack merit.

*First*, District 141 contends that the Board's determination that the Port Authority's Amended Rules are not properly classified as "law" within the meaning of the CBAs—and therefore that United's alleged violation of the MLK Day provision of the Amended Rules cannot have run afoul of the CBAs—violated the RLA and exceeded the Board's jurisdiction. Doc. 27 at 7-8; Doc. 20 at ¶¶ 29-33. "Arbitrators exceed their jurisdiction if they fail to interpret the collective bargaining agreements between the parties. They do not exceed their jurisdiction if they make a mistake in interpreting a collective bargaining agreement." *Bhd. of Locomotive Eng'rs*, 719 F.3d at 803. Thus, in deciding whether the Board exceeded its jurisdiction or violated the RLA, the pertinent question "is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Ibid.* (quoting *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987)); *see also United Food & Com. Workers, Loc. 1546 v. Ill. Am. Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009) ("An arbitrator's decision draws its essence from the contract if it is based on the arbitrator's interpretation of the agreement, correct or incorrect though that interpretation may be.").

The Board indisputably interpreted the CBAs in dismissing District 141's grievances. Contrary to District 141's submission, Doc. 27 at 8, the Board did not review solely the Port Authority's Amended Rules in holding that they are not properly classified as "law" within the

4

meaning of the CBAs. Rather, the Board based its holding on an interpretation of the CBAs themselves, explaining: "We see no evidence or authority here supporting the contention that Port Authority rules and/or policies have the effect of federal, state or local laws *as contemplated by the CBA*." Doc. 20-6 at 7 (emphasis added). Because the Board interpreted the CBAs, it did not violate the RLA or exceed its jurisdiction in making that determination. And because that determination, standing alone, suffices to ground the Board's dismissal of the grievances, there is no need to consider District 141's contention that the Board exceeded its jurisdiction or violated the RLA in making its alternate holding that the grievances were untimely. Doc. 27 at 8-9; *cf. Am. Train Dispatchers Ass'n v. Norfolk & W. Ry. Co.*, 937 F.2d 365, 367 (7th Cir. 1991) ("The Supreme Court stated that 'the Adjustment Board certainly was acting within its jurisdiction and in conformity with the requirements of the Act by determining the question of whether the time limitation of the governing collective-bargaining agreement was tolled by the filing of respondent's [earlier] state-court action.'") (quoting *Sheehan*, 439 U.S. at 93).

*Second*, District 141 contends that the Board violated due process in dismissing the grievances. Doc. 27 at 9-12; Doc. 20 at ¶¶ 34-36. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976) (internal citations and quotation marks omitted). As the Supreme Court has cautioned, vacating an arbitrator's award on due process grounds is "uncommon" because "many of the cases reviewing ostensibly extra-statutory due process objections could have been accommodated within the [RLA's] statutory framework." *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 n.7 (2009).

District 141 submits that the Board violated due process by dismissing its grievances without providing it an opportunity to respond to United's reply brief. Doc. 20 at ¶ 34. As the Seventh Circuit has explained, however, "parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997). In any event, a tribunal's failure to give time for a surreply brief violates due process only if it "*relied on* new arguments and evidence" included in a reply brief. *United States v. Sanders*, 992 F.3d 583, 586 (7th Cir. 2021) (internal quotation marks and citation omitted). District 141 does not contend, let alone show, that the Board's decision relied on arguments or evidence included in United's reply brief, thereby forfeiting any such contention; in fact, District 141 cites no authority at all in arguing that due process required that it be given a chance to file a surreply brief. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss."); *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 669 (7th Cir. 2005) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.").

District 141 also submits that "it was deprived of due process as there was no hearing provided to it on the merits of the grievances." Doc. 27 at 9. But the Board provided a hearing on the merits—it dismissed the grievances as a matter of law based on the parties' briefs, a standard procedure in federal court that surely complies with due process. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on

briefs, without oral hearings."); *Grigoleit Co. v. United Rubber, Cork, Linoleum & Plastic Workers of Am., Local No. 270*, 769 F.2d 434, 437 (7th Cir. 1985) ("[T]he type of hearing required under rule 56(c) need not include oral argument."); *Sarelas v. Porikos*, 320 F.2d 827, 828 (7th Cir. 1963) (same, for a motion to dismiss).

*Third*, District 141 contends that the Board's decision violated public policy by improperly denigrating the Port Authority's Amended Rules and by comparing MLK Day to Valentine's Day and Kwanza. Doc. 27 at 12-13; *see* Doc. 20-6 at 6 ("Federal law does not require employers to provide time off for MLK Day, with or without pay, and fewer than half of US employers do. … Thus, while some American employers close on that day, as of the most recent data available, only 28% gave the day off. In sum, MLK Day would appear to more closely parallel non-federal holidays such as Valentine's Day and Kwanza than national holidays such as July 4 and Memorial Day."). Even on the assumption that public policy provides a ground under the RLA for overturning an arbitral award, *cf. Betts v. United Airlines, Inc.*, 768 F. App'x 577, 579 (7th Cir. 2019) (noting that the Seventh Circuit has "never opined whether an arbitral award can be contested on public policy grounds"), there was no public policy violation here. The Board did not denigrate the Port Authority's Amended Rules; it simply held that those rules do not qualify as "law" within the meaning of the CBAs. Doc. 20-6 at 7. And while the Board's comparison of MLK Day to Valentine's Day and Kwanza was (to say the least) inapt, the misstep was neither here nor there, as the Board's dismissal of the grievances rested not on that comparison, but rather on its ruling that the Amended Rules are not "laws" within the meaning of the CBA provisions invoked by District 141.

In the alternative, District 141 claims that this court has jurisdiction to hear the merits of its grievances because the Board "refused to hear the [parties'] dispute." Doc. 27 at 14; Doc. 20

at ¶ 41. But the Board did not decline to hear the dispute; rather, it considered the grievances and ruled in United's favor, reasoning that the Port Authority's Amended Rules are not "laws" within the meaning of the CBA provisions invoked by District 141, and therefore that United did not violate the CBAs by failing to comply with the MLK Day provision of the Amended Rules. In any event, "[a]rbitral boards established pursuant to the Railway Labor Act have exclusive jurisdiction to resolve disputes over the application of collective bargaining agreements in the railroad and airline industries." *Tice v. Am. Airlines*, Inc., 288 F.3d 313, 314 (7th Cir. 2002); *see also Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 94 (1978) ("[In enacting the RLA,] Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements … . Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts.") (internal citations omitted). This court cannot and will not resolve District 141's grievances on the merits.

## Conclusion

The Board did not exceed its jurisdiction, fail to comply with the RLA, or violate due process or public policy in dismissing District 141's grievances. Nor would it be appropriate for this court to resolve the grievances on the merits. Accordingly, United's motion to dismiss is granted. Because any amendment to District 141's operative complaint would be futile, the dismissal is with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) ("Where it is clear that the defect cannot be corrected so that amendment is futile, it might do not harm to deny leave to amend and to enter an immediate final judgment … ."); *see also Walton v. Claybridge Homeowners Ass'n, Inc.*, \_\_

F. App'x __, 2022 WL 1562836, at *2 (7th Cir. May 18, 2022) ("[T]he court correctly concluded that any amendment here would be futile. [Plaintiff] has not identified any allegations she could add to her complaint that could overcome the problems with stating a federal claim … .").

June 6, 2022

                                                United States District Judge

9